SANITARY FIREPROOFING & CONTRACTING CO. et al. v.
SPRICKERHOFF et al.

(Circuit Court, E. D. New York. July 27, 1904.)

1. PATENTS—INFRINGEMENT—FIREPROOF WALLS.

The Geraerdts patent, No. 555,693, for a fireproof wall, consisting of a series of thin plates or blocks placed edge to edge, and provided with grooves in their sides and ends, and with registering mortises in the grooved edges thereof, and metallic tenons for connecting the plates or blocks at the sides and ends, discloses invention, but, in view of the prior art, must be limited to the precise structure shown. As so construed, *held* not infringed.

In Equity. Suit for infringement of letters patent No. 555,693, for a fireproof wall, granted to Hubertus and William Geraerdts March 3, 1896. On final hearing.

Henry D. Williams, for complainants.

Menken Bros., for defendants.

THOMAS, District Judge. The bill is filed to enjoin infringement of letters patent No. 555,693, issued March 3, 1896, to Hubertus and William Geraerdts. There is a single claim, which is for:

"A fireproof wall, consisting of a series of thin plates or blocks placed edge to edge, and provided with grooves in their sides and ends, and with registering mortises in the grooved edges thereof, and metallic tenons for connecting the plates or blocks at the sides and ends, substantially as set forth."

There is no invention in the mere connection of thin blocks or plates, as distinguished from heavier and thicker blocks; nor is there any novelty in blocks with grooves in the sides and ends, inasmuch as the same are shown in the letters patent issued to Fowler June 3, 1873. His claim is as follows:

"The grooves, b, for the reception of the dry cement, in combination with the mortar-grooves, for the purpose of constructing a wall of building blocks with wet mortar and dry cement, in combination, substantially as described."

The Fowler invention is described as follows in the specifications:

"It consists in the making of round, square, or flat grooves, near the center on all sides of the blocks, where it is desired, and of a size suitable for the reception of mortar of the desired consistency, as shown by A; also grooves on the perpendicular ends each side of the mortar grooves, as shown by b, between it and each face, of a size suitable for the reception of dry cement, plaster, or lime mixed or unmixed with appropriate materials, and in the use of dry materials as a bed for the block, and as an absorbent for any moisture that might otherwise escape to soil the surface of the block. In using this invention, as each tier of blocks is laid, the outer perpendicular grooves should be filled with the dry material before filling the mortar-groove, and on each tier the dry material should be evenly spread, to furnish a bed for the next tier. * * * By the dry bed the adjustments of the blocks are rendered easy, and moisture is furnished by the mortar in the groove to convert the dry material into paste or mortar for the adhesion of the blocks, and all together it renders easy the laying of double-faced blocks the thickness of the desired wall with dispatch, exactitude, neatness, and firmness."

The intention of the inventor of the patent in suit was to carry a groove around the edges of the blocks, both at the sides and ends, and in the channel formed by the grooves of two blocks when placed one

upon the other, or end to end, to place "cement so as to produce a good joint."

Complainant, in his brief, describes the Fowler patent as follows:

"This patent * * * discloses building blocks of considerable thickness for making a massive wall. These blocks are to be laid dry, and cemented after being laid, and have central grooves extending continuously around the top and bottom and end faces of the blocks, and additional smaller grooves on each side of the central grooves on the vertical end faces of the blocks. In construction, a dry, powdered cementing material is laid between the blocks and in the outer vertical grooves, and, after the blocks have been laid, a liquid cement or grouting is poured into the central grooves. The object is to prevent the escape of the moisture to the surface, and the consequent tarnishing of the blocks or decorative surfaces thereof. The dry powder in the additional grooves and the dry powder between the faces absorb this moisture, and prevent it from reaching the faces of the wall."

While Fowler used "grooves, near the center on all sides of the blocks, * * * for the reception of mortar; * * * also grooves on the perpendicular ends each side of the mortar grooves, * * * for the reception of dry cement," he did not provide for a canal formed by the grooves in the edges of adjacent blocks, and the superior usefulness of the complainant's structure, for the purposes of blocks placed edge to edge, appears.

The complainant's provision for mortises in the grooved edges of the blocks, and for metallic tenons for connecting the plates or blocks at the sides and ends, is not new, in such regard. In letters issued to Seldis, October 28, 1873, the claim is as follows:

"A building block made in the form of a cube or parallelopipedon, in two or more segments, fitted together by tongues and grooves, or by dowel pins and sockets, with or without the tongue, g, and groove, h, substantially in the manner herein shown and described."

The specification states:

"This invention relates to a building block having the shape of a parallelopipedon, and divided into two or more segments, which fit together by tongues and grooves, or by dowel pins and sockets, in such a manner that, when said segments are connected, they form a block of considerable size and weight, while each segment can be easily handled and put in position, and by these means a firm and durable building can be constructed with comparatively little expense."

This patent simply and plainly shows the use of tenons or dowel pins for the purpose of holding together the segments of a block.

The letters issued to Frost in 1880 have the following claim:

"A building block consisting of a parallelopipedon having openings, perforations, or sockets for the reception of fastening pins in all its various sides, ends, and faces, substantially as shown and described, said openings or sockets leaving all the solid edges and angles of the block intact, and there being two holes at right angles to each other in each cubic section of the block, substantially as shown and described."

The specification states:

"My invention has for its object to provide means whereby building blocks of the same outlines and substantially the same relative proportions as ordinary building bricks may be securely fastened together by an unadhesive substance or material which will permit the ready detachment of said blocks for reuse or reunion in changed or modified combinations."

"My invention has for its further object to construct building blocks capable

of being joined to and detached from each other by means of a detachable un-
adhesive substance or material, the angles and edges of said blocks being pre-
served solid or unbroken. My invention accordingly consists, first, of a block,
brick, or parallelopipedon having perforations, openings, sockets, or passages
in its various sides, ends, and faces for the reception of pins, whereby two or
more of such blocks or bricks may be fastened together; second, in the provi-
sion of plates having openings corresponding to those in the blocks, and
adapted for the reception of pins or pegs, whereby said plates may be fastened
between said blocks as a substitute for mortar; third, in the peculiar con-
struction of the fastening pins, which consist of pegs of any suitable form and
material, slitted at either end longitudinally, so as to permit their ready in-
sertion in the openings in the blocks and dividing boards or plates, and thereby
effectually holding the same together."

Later, Frost states that the "pins" made use of "may consist of tubes
or hollow cylinders slit lengthwise their entire extent, and said pegs
may be integral with, and permanently attached to or fastened in, the
strips, plates, or boards which represent mortar."

So far as the record is contained, this shows the former art, with
the exception of the evidence of Bell, who was called for the pur-
pose of proving that he had been engaged in the manufacture of fire-
proof partition and dumb-waiter blocks for 20 years last past, similar
to the blocks shown in the complainant's construction. As a matter
of fact, he does not testify that he had been making such blocks, or
any part thereof, for 20 years. At the very most, 6 years cover his
use of any part of the patented structure, and he gave evidence Octo-
ber 15, 1903. Although the use of grooves in blocks for holding some
adhesive substance for the purpose of connecting the blocks, and ten-
ons for like purpose, was known, yet nobody seems to have conceived
of the plan of carrying the grooves all around the sides and ends, and
passing tenons through mortises in the grooved edges. A beneficial
and desirable structure is thus obtained, and, while the invention dis-
played may be small in degree, yet there seems sufficient to sustain the
validity of the patent. In such case, however, the complainant should
be limited to the precise structure shown. It was the evident intention
of the inventor to use his blocks for a straight wall. He seems to have
had no conception of departing from a straight line, except so far as it
may be inferred from his intention to use his structure for fireproof
ceilings. After the application was filed, the examiner, among other
things, sent this communication:

"It is not understood how ceilings are built with these blocks. For instance,
how can a block be put in place in the upper right-hand corner, Fig. 1, with a
dowel pin projecting from the upper edge of the block below, and from the
end of the block to the left?"

The answer was as follows:

"Referring to this criticism we beg to state that the pins, d, are removable,
and that, in order to accomplish the feat mentioned, it is only necessary to
remove the pins."

There is no suggestion of any way of turning the corner, other than
that. After the issue of the patent, complainant did use blocks for
the purpose of making dumb-waiter shafts for tenement houses; but
this required a structure having four sides, with joints at the corners.
As one block was laid upon another, the horizontal grooves at the ad-
joining sides were preserved, and the tenons were passed into each

block in the mannner described. But there were no grooves along the ends of the blocks, nor were the ends of the plates or blocks "provided with mortises for receiving tenons, which extend into the corresponding mortises of the adjacent ends of the plates or blocks, so that the plates or blocks are connected not only in a transverse direction with the adjacent side plates or blocks, but also in a longitudinal direction with the plates at the ends of the same."

Complainant's counsel, in his brief, describes the corner connection as follows:

"It happens that in dumb-waiter shafts there are no edge to edge vertical joints. The horizontal dimensions of the shafts are so small (about two feet six inches or three feet each way), that a single block of usual dimensions will extend the full horizontal length of each side of the shaft, and therefore all vertical joints will be corner joints, with the end edge of one block opposed to the end of the inner face of the adjacent block. In these vertical joints there is therefore no edge to edge juxtaposition of the blocks, and the metallic tenons embedded within this thin walled structure are necessarily bent to follow the angular horizontal line of the thin wall. By reason of the fact that there is no edge to edge joint on vertical lines, and that one end edge alongside of each vertical joint is necessarily exposed, the continuation of the mortar grooves along the end edges from top to bottom thereof would be of no utility whatsoever in the exposed end edges, and of slight, if any, utility in the end edges opposed to the ends of faces, and is in fact not required and not used in any of the end edges."

In such construction the tenons are bent so as to follow the corners, and are laid in the grooves in the horizontal sides of the blocks, and are not inserted and imbedded in the block itself. The defendants' structure is practically the same. There is no description of such structure in the specification or in the claim, and, in view of the narrowness of the patent, such structure is deemed not to be within the invention.

The defendants should have a decree.